lml

# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KALMAR INDUSTRIES USA LLC,** | ) | |
| **d/b/a OTTAWA TRUCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 05-4060-JAR** |
| | ) | |
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF TEAMSTERS LOCAL 838,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM ORDER AND OPINION

This case involves a dispute between Kalmar Industries USA LLC d/b/a/ Ottawa Truck (the "Company" or "Ottawa Truck") and Teamsters Local Union No. 838 ("Union" or "Teamsters") over whether the Company violated the parties' collective bargaining agreement ("CBA") when it paid certain wage rates for temporary employees.  This matter is before the Court on the parties' cross motions for summary judgment (Docs. 17 and 19).  For the reasons explained in detail below, the Court denies the Company's motion and grants the Union's motion, thus confirming the Arbitrator's award.

## I.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."[1]  A fact is only material under this standard if a dispute over it would effect the outcome of the suit.[2]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[3]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[5]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[7]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8]  "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless

---

[1]Fed. R. Civ. P. 56(c).

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3]*Id.*

[4]*Id.* at 251–52.

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[7]*Id.*

[8]*Id.* (quoting Fed. R. Civ. P. 56(e)).

inappropriate if disputes remain as to material facts."[9]  When examining the underlying facts of

the case, the Court is cognizant that it may not make credibility determinations or weigh the

evidence.[10]

## II.    Uncontroverted Facts

At the outset, the Court notes that the Company's statement of uncontroverted facts often

attempts to interject facts not found by the Arbitrator or supported by the record.  For example,

the Company purports to summarize the testimony of various witnesses in an apparent attempt to

supplement the Arbitrator's findings of fact, as there is no transcript of the arbitration

proceedings.  The Court declines to reweigh the evidence and find facts, and instead, evaluates

the Arbitration Award based on the language of the parties' CBA in light of the facts found by

the Arbitrator, as it is compelled to do.[11]

The Union is a labor organization within the meaning of § 2(5) of the National Labor

Relations Act ("NLRA"),[12] and at all times relevant to this case has been the exclusive collective

bargaining representative of a unit of employees at the plant in Ottawa, Kansas operated by the

Company.  The Company is a limited liability company organized under the laws of the State of

Texas and has its principal place of business in the State of Kansas, specifically Ottawa, Kansas.

---

[9]*James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citing *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 691–92 (10th Cir.1981)), *cert. denied*, 523 U.S. 1048 (1998).

[10]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[11]*See Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 511 (2001) (*per curiam*) ("[E]stablished law ordinarily precludes a court from resolving the merits of the parties' dispute on the basis of its own factual determinations, no matter how erroneous the arbitrator's decision."); *Champion Boxed Beef Co. v. Local No. 7* , 24 F.3d 86, 87 (10th Cir. 1994) ("The arbitrator's factual findings are beyond review.").

[12]29 U.S.C. § 152(5).

The Company is also an "employer" within the meaning of § 2(2) of the NLRA.[13]  The Company and the Union have been parties to a series of CBA's dating back many years.  The parties entered into a CBA effective March 26, 2004, establishing the terms and conditions of employment for various workers at the Company's plant in Ottawa, Kansas.

In May 2004, the Union filed a grievance alleging that the Company was failing to pay temporary employees in accordance with the CBA.  The Company denied that grievance throughout the grievance procedure, and the Union submitted that grievance to arbitration in accordance with the grievance procedure.  The parties selected M.W. Gear (the "Arbitrator") to serve as arbitrator pursuant to the procedure set forth in the CBA.  The Arbitrator heard the grievance and issued an opinion and award dated March 28, 2005, in which he sustained the grievance and ordered a remedy (the "Award").

In his Award, the Arbitrator summarized the procedural history of the case, set forth the pertinent provisions of the CBA and the issues, found the facts, and issued a ruling.[14] Ultimately, the Arbitrator found that the CBA covered temporary employees, the grievance was arbitrable, that the Company had violated the current CBA by not paying temporary employees the "new hire" rates set forth in Appendix A, and ordered a remedy including back pay and a requirement that the Company pay temporary employees at the contractual rate for the duration of the current CBA.[15]

## III.    Standard of Review

---

[13]29 U.S.C. § 152(2).

[14](Doc. 5, Supplement to Complaint, subpart #4, Ex. B, Arbitrator's Award.)

[15]*Id.*

4

The Company seeks vacation of the Arbitrator's Award pursuant to section 301 of the Labor-Management Relations Act ("LMRA") of 1947, 29 U.S.C. § 185. Arbitration awards may be vacated by the district court only upon extraordinarily narrow grounds, as the Tenth Circuit recognized when it characterized the standard of review of arbitral awards as "among the narrowest known to the law."[16] There are a number of judicially-created grounds for vacating an award, including that the award is violative of public policy, that the arbitrator engaged in manifest disregard of the law, or that the arbitration denied the parties a fundamentally fair hearing.[17] Outside of these limited areas, the arbitration award must be confirmed, even in the face of errors by the arbitrator in factual findings or his interpretations of the law.[18] The district court does not sit to hear claims of factual or legal error by an arbitrator as if it were an appellate court reviewing a lower court's decision.[19] "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."[20] "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate."[21]

---

[16]*U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 830 (10th Cir. 2005).

[17]*Sheldon v. Vermony*, 269 F.3d 1202, 1206 (10th Cir. 2001).

[18]*Id.*

[19]*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-39 (1987) (Court refused to reconsider what was claimed to be "improvident, even silly, factfinding" by the arbitrator).

[20]*United Steel Workers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).

[21]*Misco*, 484 U.S. at 36 (quoting from *Enterprise Wheel*, 363 U.S. at 597).

That will be the case "as long as the arbitrator is even arguably construing or applying the

contract and acting within the scope of his authority."[22]

> But an award does not draw its essence from the CBA if it is
> contrary to the express language of the contract . . . or . . . is so
> unfounded in reason and fact, so unconnected with the working
> and purpose of the agreement as to manifest an infidelity to the
> obligation of the arbitrator. . . . [or] if viewed in the light of its
> language, its context, and any other indicia of the parties'
> intention, it is without factual support.[23]

"Manifest disregard" of the law means more than simply a misunderstanding of the

applicable law or an error in its application.[24]  To engage in "manifest disregard," the arbitrator

must be "willfully inattentive" to the governing law.[25]  That means that the party asserting

manifest disregard of the law must show that the arbitrator knew what the binding authority was

and explicitly disregarded it.[26]  Notably, the "manifest disregard" standard applies only to

conclusions of law; "[t]he arbitrator's factual findings are beyond review."[27]

## IV.    Analysis

### A.    Arbitrability of the Union's Grievance

#### *Authority to Decide Arbitrability*

---

[22]*Id*. at 38.

[23]*Local No. 7 United Food and Commercial Workers Int'l Union v. King Soopers, Inc.*, 222 F.3d 1223, 1227 (10th Cir. 2000) (citing *Mistletoe Express Serv. v. Motor Expressmen's Union*, 566 F.2d 692, 694 (10th Cir. 1977)) (internal quotations and citations omitted).

[24]*Sheldon v. Vermonty*, 269 F.3d 1202, 1207 (10th Cir. 2001).

[25]*Id*.; *U.S. Energy Corp. v. Nukem*, 400 F.3d 822, 830 (10th Cir. 2005).

[26]*Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001).

[27]*Kennecott Utah Copper Corp. v. Becker*, 195 F.3d 1201, 1204 (10th Cir. 1999) (citing *Champion Boxed Beef v. Local No. 7*, 24 F.3d 86, 87 (10th Cir. 1994)); *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997) ("Errors in [ ] the arbitrator's factual findings . . . do not justify review . . . [T]he factual findings of the arbitrator are insulated from judicial review.").

The question of who, the court or the arbitrator, has the authority to decide the arbitrability of a grievance in a particular case determines the standard of review of the arbitrator's decision.  If the parties have "clearly and unmistakenly" agreed to allow the arbitrator to decide arbitrability, the "court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances."[28]  Conversely, if the parties did not agree to submit the arbitrability question to the arbitrator, the court conducts an independent review.[29]

The framework considered by the Supreme Court in *First Options of Chicago, Inc. v. Kaplan*[30] is useful in separating the issues before the Court.  The Court explained that "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter."[31]  The Court noted, however, the difficulty in permitting arbitrators to decide the scope of their own jurisdiction:

> [T]he "who (primarily) should decide arbitrability" question . . . is rather arcane.  A party often might not focus upon that question or upon the significance of having the arbitrators decide the scope of their own powers.  And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would

---

[28]*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

[29]*Id.*

[30]514 U.S. 938, 942 (1995).

[31]*Id.* at 943.

decide.[32]

Accordingly, the Court imposed a stringent test for the courts to apply in cases where the parties disagree over who should decide the arbitrability issue: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."[33]  The Tenth Circuit adopted this standard in *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*[34]

The Union also cites the well-established rule that a party does not preserve its objection to the arbitrability of an issue unless an objection is timely made in the arbitration proceeding.[35] In other words, a party that agrees to submit the question of arbitrability to the arbitrator waives any right to object later to that arbitrator's authority.[36]  The evidence must be clear concerning the agreement to arbitrate, and the evidence may include the parties' conduct during arbitration.[37] If a party submits and argues the issue on the merits without either objecting to the arbitrator's authority or expressly reserving the jurisdiction objection, the party waives its right to seek

---

[32]*Id.* at 945 (citations omitted).

[33]*Id.* at 944 (citing *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)) (alteration in original).

[34]78 F.3d 474, 478 (10th Cir. 1996); *see also, e.g., Oil, Chem., & Atomic Workers Int'l Union v. Conoco, Inc.*, 241 F.3d 1299, 1304 (10th Cir. 2001); *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

[35]*See, e.g., Conntech Dev. Co. v. Univ. of Conn..*, 102 F.3d 677, 685 (2d Cir. 1996).

[36]*Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994), *cert. denied*, 513 U.S. 1044 (1994).

[37]*See First Options*, 514 U.S. at 944-47; *Van Waters & Rogers Inc. v. Int'l Bhd. Teamsters, Local Union 70*, 913 F.2d 736, 740 (9th Cir. 1990).

judicial review of this jurisdiction objection.[38]  "If a party willingly and without reservation

allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue

that the arbitrator lacked authority to decide the matter."[39]  Conversely, if  "a party clearly and

explicitly reserves the right to object to arbitrability, his participation in the arbitration does not

preclude him from challenging the arbitrator's authority in court."[40]  The record suggests that the

Company has followed the former course.

The Company alleges in both its Brief in Support of Motion for Summary Judgment as

well as its arbitration brief that:

> At the inception of the hearing, the Company, having previously so
> notified the Union, notified the Arbitrator that the Company would
> not stipulate that the grievance was properly before the Arbitrator
> and objected to further proceeding.  Further, the Company
> contended and continues to contend, that the issue raised by the
> Union grievance is not subject to arbitration.  The Parties and the
> Arbitrator agreed that the Arbitrator would take the Company's
> objection under advisement and, that subject to the Company's
> continuing objection, the arbitration hearing would proceed with
> the admission of exhibits and testimony on the merits.[41]

The Union strongly disagrees that the Company raised such a continuing objection, thus

preserving the arbitrability issue for later judicial determination.  The Company does not cite to

anything in the record to support its assertion that it raised a continuing objection, nor could the

---

[38]*Van Waters & Rogers*, 913 F.2d at 740; *cf. First Options*, 514 U.S. at 944-47 ("merely arguing arbitrability to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point.").

[39]*AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) (citation omitted).

[40]*Id*. (citation omitted).

[41](Doc. 20 at 4.)

Court find any such documentation in the record.[42]  In his award, the Arbitrator found that

> At the hearing, the Employer stated the threshold issue as: Is the subject of temporary employees' pay a permissive subject and therefore not grievable/arbitrable?  If the threshold issue was denied, the parties agreed the issue was: Did the Employer violate their current labor contract when the Employer failed to pay temporary hourly associates as set forth in Appendix A[?] If so, what is the appropriate remedy?

Thus, it appears that the Company agreed to submit the arbitrability issue to the Arbitrator. Moreover, the statement of issues set forth in the Company's brief to the Arbitrator contained no mention of any reservation of the arbitrability issue for judicial determination.  Instead, the statement of the issues set forth by the Company indicated that both the merits and arbitrability were before the Arbitrator, which is consistent with the Arbitrator's finding of fact and inconsistent with the Company's assertion that it raised a "continuing objection."

In *First Options*, the Supreme Court held that deference to an arbitrator's decision on arbitrability is not necessary unless there is evidence of a clear and unmistakable willingness to arbitrate the issues.[43]  However, *First Options* did not involve a union or a collective bargaining agreement, and there was no underlying agreement between the parties providing for arbitration. Instead, the issue was whether private parties could be forced to arbitrate the issue of arbitrability merely because they filed a brief with the arbitrator objecting to the arbitrator's jurisdiction.[44]  On these facts, the Supreme Court found that "merely arguing arbitrability to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be

---

[42]The Court notes that the Company did not file a reply to the Union's response to the Company's motion for summary judgment, and does not address the issue of waiver of arbitrability in any of its submissions.

[43]*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[44]*Id*. at 946.

effectively bound by the arbitrator's decision on that point."[45]

The circumstances of this case are distinguishable from *First Options*.  In contrast to the parties in *First Options*, who never signed an individual arbitration agreement, the Company and the Union are parties to a CBA that contains a broad arbitration agreement wherein the parties have agreed to arbitrate "any dispute over the interpretation or application of the provisions of this Agreement."  Moreover, the Company went beyond merely arguing arbitrability: it submitted the question of arbitrability to the Arbitrator for his determination as a "threshold issue," and stated in its brief that both the merits and the arbitrability issues were "before the Arbitrator."  The Court can find nothing in the record to indicate that the Company reserved the question of arbitrability for the court.  Accordingly, the Court finds that the Company voluntarily agreed to submit the issue of arbitrability to the Arbitrator and that the Arbitrator's determination that the grievance was arbitrable is subject to deferential review.

### *Arbitrator's Decision*

 "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."[46]  Although the Federal Arbitration Act embodies a clear federal policy favoring arbitration agreements,[47] such agreements must not be so broadly construed as to encompass claims that were not intended to be arbitrated under the original contract.[48]  "As with any contract, the

---

[45]*Id.*

[46]*Id.* at 943.

[47]*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

[48]*AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000).

touchstone for interpreting an arbitration clause must be the intention of the parties."[49]  While keeping in mind federal policy favoring arbitration, the court must also consider whether the Company and the Union intended for the grievance over temporary associates to be arbitrated. As previously discussed, the court's review is extremely limited.  The court's review is not complete, however, merely because an award survives a contractual analysis—it must also review the award in light of federal statutes.  An award "repugnant to the NLRA will not be enforced."[50]

Here, the Arbitrator found that the Company had not met its burden of persuasion on the issue of arbitrability and that the weight of the evidence establishes that temporary employees were included in the current CBA.[51]  Looking first to Article III, Sections 1 and 2 of the CBA, the Arbitrator found the language describing the bargaining unit ambiguous, at best.[52]  If the CBA excluded temporary employees, the Arbitrator would expect to see such language in "Excluded Persons."  Noting that these sections have been modified over time to add clarity, the Arbitrator found that at no time was there specific language regarding temporary employees in these sections.  The Arbitrator then looked to other parts of the CBA, noting that in several sections, the parties clearly and specifically addressed conditions of employment for temporary employees, including overtime, seniority and fringe benefit eligibility, and compensation.[53]  The

---

[49]*Id*. (citations omitted).

[50]*Local 58, Int'l Bhd.. of Elec. Workers, AFL-CIO v. S.E. Mich. Chapter, Nat'l Elec. Contractor's Ass'n*, 43 F.3d 1026, 1030 (6th Cir. 1995) (quoting *Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp.*, 803 F.2d 69, 72 (2d Cir. 1986)).

[51](Doc. 5, Ex. 6.)

[52]*Id*.

[53]*Id*.

Arbitrator stated that there is no reason to have such language in the CBA unless temporary employees are covered by the CBA.[54]  Finally, the Arbitrator noted that neither party offered any evidence on the bargaining history for the current CBA, and found it "difficult to believe that the [Company] excluding temporary employees from the current CBA, given the history otherwise, would not be a significant event in the bargaining history."[55]

The Company argues that the underlying subject matter of the Award, temporary employees, is a permissive subject of bargaining, that they are not part of the CBA and that the grievance procedures do not apply to them.  The crux of the Company's argument is that only mandatory bargaining subjects can form the basis for enforceable arbitration awards and that agreements regarding permissive subjects are not arbitrable.  The Company contends that defining the duty to bargain by classifying topics into mandatory/permissible topics is the subject of national labor policy developed by the NLRB and courts.  Neither the duty to bargain, nor the duty to arbitrate, nor arbitration award enforceability attaches to permissible subjects of bargaining.  Because the topic of temporary employees and matters related thereto is denominated permissible subjects, the Company urges that the Award is not enforceable.  This argument is without merit.

Federal labor law imposes upon employers and unions a duty to bargain collectively regarding "wages, hours, and other terms and conditions of employment."[56]  In interpreting the statutory duty to bargain, the NLRB has categorized the subjects of bargaining as mandatory,

---

[54]*Id.*

[55]*Id.*

[56]29 U.S.C. § 158(d).

permissive and illegal.[57]  "The duty [to bargain] is limited to those [mandatory] subjects, and within that area neither party is legally obligated to yield. . . . As to other matters, however, each party is free to bargain or not to bargain, and to agree or not to agree."[58]  These "other matters" are permissive subjects of bargaining.  "A unilateral change as to a [mandatory] subject . . . violates the statutory duty to bargain and is subject to the Board's remedial order."[59]  Such unilateral change is a not a prohibited unfair labor practice when it changes a permissive subject of bargaining.[60]  That is not to say a union in such a situation is without a remedy, as the parties are still contractually bound by their agreements on permissive subjects, and those agreements can be enforced.[61]  The Court assumes for purposes of this motion that temporary employees are a permissive subject of bargaining.

In *Allied Chemical & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co.*,[62] a case cited by the Company in support of its argument, the Supreme Court considered whether a midterm modification of retirees' insurance benefits was an unfair labor practice.  The company sought to modify its contributions to the retirees' health benefits because Medicare was enacted.[63]  The NLRB found that the retirees' benefits were a mandatory subject of collective

---

[57] *NLRB v. Borg-Warner Corp., Wooster Div.*, 356 U.S. 342, 349 (1958).

[58]*Id.* at 349.

[59]*First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 674-75 (1981).

[60]*Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 185 (1971).

[61]*Id.* at 188.

[62]404 U.S. 157, 159 (1971).

[63]*Id.* at 161.

bargaining.[64]  The Supreme Court held that the NLRB's decision was not supported by law, that the term "employee" does not include retired workers, that the retired workers are not employees included in the collective bargaining unit, and the retired workers' benefits are a permissive subject of collective bargaining.[65]  The Court further noted that parties cannot convert a permissive subject into a mandatory subject merely because they have a long-standing practice of negotiating over a particular permissive subject.[66]  The Court went on to recognize, however, that a union and company may agree to bargain for retirees' benefits, and once these bargained-for benefits are vested, retired workers may have contract rights under the CBA that they could enforce pursuant to § 301 of the LMRA if the benefits are changed.[67]

The Company has misconstrued the Supreme Court's decision in *Pittsburgh Plate Glass* to mean that "only mandatory bargaining subjects can form the basis for enforceable arbitration awards."  In fact, the Court noted that "[t]he remedy for a unilateral mid-term modification to a permissive term lies in an action for breach of contract, not in an unfair-labor-practice proceeding."  Moreover, contrary to the Company's claim that permissive subjects are not arbitrable, federal courts have routinely enforced permissive subject awards where a union and company bargain for the permissive benefits and include the benefits in their contract.[68]  Thus,

---

[64]*Id*. at 162.

[65]*Id*. at 166-82.

[66]*Id*. at 187.

[67]*Id*. at 181 n.20.

[68]*See, e.g., Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am.*, 440 F.3d 809, 815-16 (6th Cir. 2006) (collecting cases regarding retiree benefits); *Sheet Metal Workers Local Union No. 54 v. E.F. Etie Sheet Metal Co.*, 1 F.3d 1464 (5th Cir. 1993) (interest arbitration); *Local Union 257, Int'l Bhd. of Elec. Workers v. Sebastien Elec.,* 121 F.3d 1180 (8th Cir. 1997) (same).

the fact that temporary employee wages are a permissive subject of bargaining does not render the Arbitrator's decision unenforceable.  Once the parties agreed to include temporary employees in the CBA, as the Arbitrator found, they are bound by their agreement in the same way that they are bound by agreements relating to mandatory subjects.[69]

In addition to the principle of judicial determination of arbitrability discussed above, the Supreme Court has also established a "presumption of arbitrability."[70]  If the CBA contains an arbitration clause, the Supreme Court found that it should be presumed that the parties intended to arbitrate the dispute unless there is "positive assurance" that the arbitration clause does not cover the matter.[71]  "[I]n cases involving broad arbitration clauses the Court has found the presumption of arbitrability 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'"[72]

The presumption of arbitrability is particularly applicable where, as here, the arbitration clause provides for arbitration of any controversy involving interpretation of the CBA.[73]  Under this broad interpretation clause, the issue of whether the wage rates in Appendix A apply to temporary employees is arbitrable because it is a dispute over the interpretation of application of the CBA wage rates.  As the Arbitrator determined, the CBA before this Court clearly includes

---

[69]*See, e.g., Auto Workers v. Yard-Man, Inc.*, 716 F.2d 1476, 1485 (6th Cir. 1983) (agreement as to permissive subject of retiree heath benefits enforceable), *cert. denied*, 465 U.S. 1007 (1984).

[70]*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960).

[71]*Id.*

[72]*Cleveland Elec. Illuminating Co.*, 440 F.3d at 814 (quoting *AT & Techs., Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986)).

[73](Doc. 5, Ex. A at 10.)  *See United Steelworkers of America v. Mead Corp.*, 21 F.3d 128, 132 (1994).

temporary employees.  The relevant provisions are found in Article III, sections 1 and 2 of the CBA, which define the employees included and excluded in the bargaining unit.  Nothing in Article III expressly excludes temporary employees from arbitration.  Moreover, other provisions of the CBA specifically address conditions of employment for temporary employees, including overtime (Article IX, section 6), seniority and fringe benefit eligibility (Article X, Section 3), and compensation (Article XVIII, Section 10).

The Court finds that the presumption of arbitrability applies to this dispute over temporary employee wages because the parties have agreed that temporary employees are included in their CBA and because there is nothing in the CBA that specifically excludes the dispute from arbitration.  The Arbitrator's decision that the temporary employee wage dispute was arbitrable is enforceable and can hardly be described as completely irrational or in manifest disregard of the law.  Thus, the Arbitrator's determination in this case that the dispute is arbitrable is entitled to deference and must stand.

**B.      Merits of the Grievance Award**

Having determined the threshold issue of arbitrability, the Arbitrator then determined the issue of what wage rates the CBA obligated the Company to pay its temporary employees.  The Arbitrator based his decision on what he deemed the plain and unambiguous language of Article XVIII, section 9, Wages and Other Compensation, which states that "Wages will be paid in accordance with Appendix A, attached hereto."  The Arbitrator determined that temporary employees must be paid at the "new hire" rates set forth in Appendix A.  The Union contends that the Arbitrator's Award draws its essence from the parties' CBA and should be enforced.

The Company counters that the Arbitrator's award added a pay provision for temporary

17

employees in the CBA where none exists.  As the Company points out, the Arbitrator found that neither the parties' 1980-83 CBA nor the parties' current CBA contains specific mention of an hourly pay rate for temporary employees, yet in spite of the fact that no contractual provision exists, the Award mandates its enforcement.  The Company asserts that this result is the product of pure presumption, quoting from the Award: "Did the parties consciously negotiate such a result when the 'temporary hire' hourly rate in Appendix A was dropped from the CBA?  The Arbitrator doubts this."  The Company also contends that despite evidence of the deliberate omission of a specific provision for temporary employee pay, the Award adds terms in violation of the CBA's prohibition to do so.  The Company argues that, in essence, the Arbitrator dispensed his "own brand of industrial justice," and the Award draws its essence from the Arbitrator's doubt and speculation.

The Court finds that the Arbitrator's decision is not "contrary to the express language of the contract."[74]  Instead, the Arbitrator applied the plain language of the CBA and ruled that temporary employees would also be paid in accordance with the rates in Appendix A.  Since Appendix A of the current CBA no longer includes a specific lower rate for temporary employees, as had previous CBAs, the Arbitrator specifically ruled that the "new hire" rate was the required wage rate for temporary employees.  The Company argues that the parties' failure to include a specific lower wage rate for temporary employees in the current CBA meant that the Company was free to pay any rate it wished to temporary employees.  The Arbitrator considered

---

[74]*Mistletoe Express Serv. v. Motor Expressmen's Union*, 566 F.2d 692, 694 (10th Cir. 1977).

and rejected this argument, and the Court may not reconsider and redetermine its merits.[75] Rather than fabricating a wage rate and applying his own brand of industrial justice, the Arbitrator grounded his award in the language of the parties' CBA.  Because the Arbitrator's decision was based on the plain language of the parties' CBA, the Award "'draws its essence from the collective bargaining agreement' [and] it must be upheld."[76]

### C.    Prejudgment Interest

"The granting of prejudgment interest from the date of the arbitrator's award in an action seeking to confirm that award is a question of federal law entrusted to the sound discretion of the district court."[77]  In suits under § 301 of the LMRA, prejudgment interest is awardable "when the damages resulting from a breach of contract are ascertainable with mathematical precision."[78] An award of prejudgment interest is proper if it would compensate the wronged parties and so long as other equities would not make such an award unjust.[79]

In this case, it appears that the back pay owed to the Company's temporary employees can be determined with mathematical precision.  As the Union explains, this calculation involves subtracting the hourly rate the Company actually paid to each individual temporary employee from the applicable contractual rate and multiplying that difference by the hours worked at those

---

[75]*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("[A]s long as the arbitrator is even arguably construing the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").

[76]*Champion Boxed Beef Co. v. Local Union No. 7*, 24 F.3d 86, 87 (10th Cir. 1994) (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

[77]*United Food and Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 949 (10th Cir. 1989) (citations omitted).

[78]*Eazor Express, Inc. v. Int'l Bhd. of Teamsters*, 520 F.2d 951, 973 (3d Cir. 1975), *cert. denied*, 424 U.S. 935 (1976).

[79]*Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1289 (10th Cir. 1998).

rates by each temporary employee during the back pay period.  Thus, the Court awards prejudgment interest in this case in order to make the temporary employees in the back pay class whole.

The Court must also decide what interest rate applies and when the interest obligation began running.  Although the rate of prejudgment interest allowed in a federal claim is a matter of federal law, the courts generally look to state law to determine the rate of prejudgment interest.[80]  Because § 301 does not specify a rate of interest, the Court looks to Kansas law.  The prejudgment interest rate in Kansas is ten percent annually as provided at K.S.A. § 16-201.  The Court, in its discretion, concludes that this is an equitable rate of interest under the circumstances of this case.  The interest rate shall apply from March 28, 2005, the date that the Arbitrator rendered his Award.[81]

**IT IS THEREFORE ORDERED BY THE COURT** that the Company's motion for summary judgment (Doc. 19) is DENIED;

**IT IS FURTHER ORDERED** that the Union's motion for summary judgment (Doc. 17) is GRANTED, and that the Arbitrator's Award is confirmed;

**IT IS FURTHER ORDERED** that prejudgment interest of ten percent is awarded from March 28, 2005, the date of the Arbitrator's Award.

---

[80]*Van Hoove v. Mid-America Bldg. Maint., Inc.*, 841 F. Supp. 1523, 1536-37 (D. Kan. 1993) (citation omitted).

[81]*See Gulf & W. Mfg. Co. v. United Steelworkers of Am., Dist. No. 9*, 694 F. Supp. 38, 46 (D.N.J. 1988) and cases cited therein.

IT IS SO ORDERED.

Dated this  26th  day of September, 2006.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

*Kalmar Industries v. International Brotherhood of Teamsters*, 05-4060-JAR, Memorandum Order and Opinion

*Kalmar Industries v. International Brotherhood of Teamsters*, 05-4060-JAR, Memorandum Order and Opinion